### UNITED STATES v. MILLS et al.

#### (Circuit Court, S. D. Alabama. April 3, 1909.)

#### No. 251.

1. PUBLIC LANDS (§ 120*)—SUIT BY UNITED STATES FOR CANCELLATION OF PATENT—MEASURE OF PROOF REQUIRED.

In a suit by the United States to cancel a patent to public land on the ground of fraud the burden of proof to establish the fraud is on the government, and the evidence, whether direct and positive or circumstantial, must be clear, unequivocal, and convincing.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. § 335; Dec. Dig. § 120.*]

2. PUBLIC LANDS (§ 120*)—SUIT BY UNITED STATES FOR CANCELLATION OF PATENT—FRAUD IN HOMESTEAD ENTRY.

Defendant, a young unmarried man, without means, working by the day, his compensation including his board, filed a homestead claim on government land a few miles distant from his place of employment. He went upon the land, built a house, chicken house, and horse stable, and inclosed a small part of the land. During the five years before making final proof he had tenants, mostly negroes, living in the house and cultivating the land on shares. He boarded and slept for the most part where he worked, but visited the land every few days, and once in every four or five months slept there. *Held*, that under Rev. St. § 2291 (U. S. Comp. St. 1901, p. 1390), which requires proof that a homestead entryman has "resided upon or cultivated" the land for five years, such facts were not sufficient to establish fraud in the entry or final proof, which entitled the government to a cancellation of the patent issued for the land, there being no substantial evidence that defendant did not act in good faith and in the belief that he had complied with the law.

[Ed. Note.—For other cases, see Public Lands, Dec. Dig. § 120.*]

In Equity.

Wm. H. Armbrecht, Dist. Atty., for the United States.
McIntosh & Rich, for defendants.

TOULMIN, District Judge. This is a bill in equity filed by the United States to cancel a patent issued by the United States to the defendant Henry C. Mills. The bill is filed to set aside and annul the patent upon the ground of fraud in obtaining it.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

The bill alleges that the testimony of said Mills and that of his witnesses in making the final proof in a homestead entry made by him was false and fraudulent; that it was false and fraudulent in that said Mills did not establish actual residence upon the land covered by the entry; that he did not live on it continuously from the date of the entry, January 15, 1898, to January 3, 1903, the date of final proof proceeding, and did not cultivate the same during that period; that the defendant Henry Brannan was a witness in the said final proof proceeding, and that his testimony then given was false and fraudulent as to said Mills having established an actual residence on said land and cultivated the same; and that it was false and fraudulent in that said Brannan testified that he was not interested in said homestead entry. The bill charges that the defendants Henry Brannan and Thomas H. Brannan, with knowledge of the alleged fraud, purchased the land covered by the patent.

Each of the defendants answers denying specifically the allegations of fact in the bill of complaint in so far as it alleges any fraudulent conduct on their part, and affirms that the testimony which was given in the final proof proceeding was true.

"Canceling an executed contract is an exertion of the most extraordinary power of a court of equity. The power ought not to be exercised except in a clear case, and never for an alleged fraud, unless the fraud be made clearly to appear." Atlantic Delaine Co. v. James, 94 U. S. 207, 24 L. Ed. 112.

A suit by the government to set aside or annul a patent issued by it should be sustained only when the allegations on which it is attempted are clearly stated and fully sustained by proof. U. S. v. Stinson, 197 U. S. 203, 25 Sup. Ct. 426, 49 L. Ed. 724; U. S. v. Budd, 144 U. S. 154, 12 Sup. Ct. 575, 36 L. Ed. 384.

In the case of the United States v. De Moines & Co., 142 U. S. 541, 12 Sup. Ct. 316, 35 L. Ed. 1099, the court said: "Muniments of title issued by the government are not to be lightly destroyed."

"In a suit by the United States to cancel a patent of public land, the burden of producing proof and establishing the fraud is on the government, from which it is not relieved although the proposition which it is bound to establish may be of a negative nature." Colorado Coal & Iron Co. v. U. S., 123 U. S. 307, 8 Sup. Ct. 131, 31 L. Ed. 182.

"The testimony on which this is done must be clear, unequivocal, and convincing. It cannot be done upon a bare preponderance of evidence which leaves the issue in doubt." Maxwell Land Grant Cases, 121 U. S. 325, 7 Sup. Ct. 1015, 30 L. Ed. 949; United States v. San Jacinto Tin Co., 125 U. S. 273, 8 Sup. Ct. 850, 31 L. Ed. 747.

"Fraud is never presumed, and it devolves upon him who alleges fraud to show the same by satisfactory proof." Walker v. Collins, 59 Fed. 70, 8 C. C. A. 1.

In the case of United States v. Detroit Timber & Lumber Co. (C. C.) 124 Fed. 393, the court said:

"This rule applies with increased force where the government seeks to cancel a patent which has been issued by it. * * * The facts established, as a whole, should be inconsistent and irreconcilable with the integrity of the patent or the integrity and legality of the actions of the defendants charged

with the fraudulent entries, and should be so satisfactory as to make it clear to the court that the land was procured by fraud."

In view of these legal rules, which are well settled by the United States courts, and tested by them, let us consider what facts are established by the evidence, and whether they, as a whole, are inconsistent and irreconcilable with the integrity and legality of the action of the defendant charged with the fraudulent entry in question in this case.

The burden of producing proof and establishing the fraud is on the government, and the evidence, whether direct and positive or circumstantial, must be clear, unequivocal, and convincing. The date of the homestead entry involved in this case was November 16, 1897. The final proof to perfect the entry was made January 3, 1903, and the patent issued March, 1904. The law provides that no patent shall issue until the expiration of five years from the date of the entry, and the person making such entry shall prove by two credible witnesses that he has resided upon or cultivated the same for the term of five years immediately succeeding the time of filing the affidavit, and makes affidavit that no part of such land has been alienated, etc. Rev. St. § 2291 (U. S. Comp. St. 1901, p. 1390). The law also provides that if at any time after the filing of the affidavit required of the applicant, and before the expiration of five years mentioned in section 2291, the person having filed such affidavit has actually changed his residence, or abandoned the land for more than six months at any time, then and in that event the land so entered shall revert to the government. Rev. St. § 2297 (U. S. Comp. St. 1901, p. 1398).

The complainants allege that the testimony of said Mills, the entryman, and of his witnesses, in making said final proof, was false and fraudulent, in that said Mills did not establish actual residence upon the land covered by the entry, did not live on the land continuously from the date of the entry to the date of making final proof, and did not cultivate said land during that period. While the evidence on the part of the complainants to sustain these allegations is in some respects vague, indefinite, and uncertain, particularly as to dates, its substance is that the defendant Mills claimed a parcel of land which was called the "Clay Mills homestead." It had on it a small house containing two rooms and a gallery, a small chicken house, and perhaps a horse stable. The testifying witnesses occasionally passed by the place along a nearby public road. There was a very small part of the land under fence, which was at times cultivated as a vegetable garden and potato patch. Said witnesses had never seen said Mills on the place during the time he claimed it as a homestead. There were some negroes living in the house for a considerable part of the time, and were sometimes seen working the land. Said Mills did not live on the land, but stayed most of the time at a turpentine still belonging to the defendants Henry Brannan and Thomas H. Brannan. Mills was employed by said Brannans and worked at their still, which was several miles distant from said homestead; that he took his meals and usually slept at the still in a room connected with a store there which belonged to said Brannans. Mills was a nephew of said Henry Brannan, and

he was sometimes seen, principally on Sundays, at Henry Brannan's dwelling house, situated three or four miles from the still. Mills kept clothes at the still in the room where he slept, which room he occupied with said Thomas H. Brannan, who kept his clothing there, and who was also employed at the still. One of complainants' witnesses testified that said Mills got him to move a family of negroes into the house on the homestead. Another witness for complainants testified that he, as a physician, visited some families living on the homestead between seven and ten times and never saw Mills there. There was some conflict in the evidence as to the amount of land under fence and in cultivation, and also as to the value of the improvements on it.

The evidence on the part of the defendants was, in substance, that the defendant Mills was an unmarried man at the time he entered the homestead, and remained so until some time after the final proof was made; that he was a poor young man, and owned nothing except his clothes and a horse which horse he used in his work for Brannan & Son's still. He was what is called "the woods rider," and his employment required him to go into the woods and to ride them almost daily. Soon after he entered the land he settled on it and built a lumber house of two rooms and gallery, a small chicken house, and a horse stable, and put a fence around the house and garden. He also fenced in another piece of the land which he cleared up for a patch. Said land was cultivated each year thereafter until final proof was made. Said Mills furnished the money to make the improvements on the land without assistance from any one. He had no money to buy furniture to put in the house, and none with which to hire a cook. He made his living by his daily work, and worked for Brannan & Son by the day for so much a day and his board. He took his meals at the still, and usually slept there in a room with said Thomas H. Brannan. His work carried him to the woods almost daily, and in passing backward and forward he was on his homestead every few days—at least, once a week. He did not actually reside on the homestead continuously, but he was on the land every few days looking after it and exercising control over it; that he had persons actually living on the homestead taking care of the improvements for him and cultivating the land. He furnished fertilizers to make the crops, and the occupants of the land worked them for a division of the products. A large part of the time there were negroes occupying the house and cultivating the land on the terms mentioned, and a part of the time a white man named Dan Brannan cultivated the land for said Mills. There was also evidence on the part of defendants that while defendant Mills did not actually reside on said homestead—did not abide there; did not eat and sleep there as a regular or general thing—he went there occasionally, at least every four or five months, and spent a night on the homestead under the idea that this was such a compliance with the law as would avoid the effect of section 2297, Rev. St., which provides that if, at any time, the homesteader before the expiration of five years from the date of the entry has actually changed his residence or abandoned the land for more than six months at any time, then and in that event the land so entered shall revert to the govern-

169 F.—44

ment. The proof was that said Mills had no other home, claimed no other, and exercised control over no other. The substance and effect of said Mills' explanation or excuse for not "actually" and "continuously" residing on said land was that he had to go away from it to get work to maintain himself; that his compensation was small, and included in it his board or rations which were furnished him at the place where he worked; and that, not being able to hire a person to cook for him, he, as a matter of convenience and economy, ate and usually slept where he worked.

There was also evidence that, some months after the final proof was made, Mills conveyed to the defendants Henry Brannan and Thomas H. Brannan the land covered by his entry for a price considered as being a good price for the land at that time. This circumstance may, and doubtless did, raise some suspicion that the land was entered for the benefit of said Henry Brannan, and not honestly and in good faith for the purpose of actual settlement and cultivation by said Mills. Circumstances, however, that do but little more than to raise a suspicion are not sufficient to authorize a court of equity to set aside or to annul a written instrument for fraud in its execution. Moreover, Mills and Henry Brannan in their testimony state the circumstances under which said conveyance was made and the purpose for which it was made. This testimony is uncontradicted.

The question then presented is, Are the facts and circumstances established by the evidence, as a whole, inconsistent and irreconcilable with the integrity and legality of the actions of said Mills, the entryman charged with the fraudulent entry? Is that evidence so clear, unequivocal, and convincing as to satisfy the court that the land was procured by fraud? If there was fraud, there was perjury in making the final proof. From the evidence I am inclined to believe that Mills and Henry Brannan were not conscious of wronging, or of any attempt to wrong the government, and honestly thought that Mills' acts in relation to the land were in compliance with the requirements of the law, and all that was necessary to perfect his entry.

Now, were Mills' acts in relation to the land in compliance with the requirements of the law? In making the final proof, the law provides that the entryman should prove that he had resided upon or cultivated the land for the term of five years immediately succeeding the time of filing the affidavit with his application for the entry, and makes affidavit that no part of such land has been alienated, etc. Rev. St. § 2291. The evidence is that Mills filed his affidavit November 16, 1897; that he settled on the land in January, 1898, and built a dwelling house thereon in July, 1898; that he put up fences on the land and cultivated a few acres of it every season from January, 1898, to January, 1903, when the final proof was made; that he had no other residence or home of his own; that he worked elsewhere, and usually ate and slept where he worked, but that he made frequent visits to the land, exercised acts of ownership and control over the same, and had persons by and under his permission or authority actually residing on the land, who cultivated the same for their and his joint account. There is some evidence to the contrary, but of a negative character, at least as to many of the facts stated.

The statute says that the entryman shall reside upon or cultivate the land, etc. From the evidence in the case there can be no question that Mills settled on the land by making improvements on it, by fencing in a part of it and cultivating it (to a small extent, it may be), and subsequently building a dwelling house on it. But if this was done honestly and in good faith, this bill cannot be maintained. No question as to the defendants Henry and Thomas H. Brannan being innocent purchasers of the land in question is, in my opinion, raised by the evidence in this case, for if there was fraud in procuring the patent I am satisfied that they had knowledge of it.

The sole question, then, on which the case turns is whether there was perjury committed in making the final proof, and the patent thereby fraudulently procured. If so, the complainants would be entitled to a decree. But it is upon them to sustain the allegations of fraud charged in their bill of complaint by clear, unequivocal, and convincing testimony. This, in the opinion of the court, they have not done.

The bill is therefore dismissed.